UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

DAVID CHARLES SUSSMAN,
     Petitioner,

vs.                           Case No.:  4:20cv412/MW/EMT

SECRETARY DEP'T OF CORRECTIONS,
     Respondent.
_____/

## **ORDER and REPORT AND RECOMMENDATION**

Petitioner David Charles Sussman (Sussman) commenced this case by filing a petition for writ of habeas corpus under 28 U.S.C. § 2254 with attached exhibits (ECF No. 1).  Sussman challenges two disciplinary reports (DRs) issued by the Florida Department of Corrections (FDOC) (*see id.*).  Respondent (the State) filed a response to the petition, contending Sussman's claims were unexhausted and procedurally barred (ECF No. 13).  The State attached the state court record (ECF No. 13-1).  Sussman filed a motion to amend his § 2254 petition with an additional claim (*see* ECF No. 32).  He filed a proposed amended petition with an attached supporting declaration and memorandum of law (ECF No. 33).  The State opposed the motion to amend on grounds of futility (ECF No. 36).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.

*See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B)–(C) and Fed. R. Civ. P. 72(b).  After careful consideration of the issues and materials presented by the parties, the undersigned concludes that Sussman's amended petition will be deemed the operative pleading.  However, the claims asserted in the amended petition should be denied on the merits.  *See* 28 U.S.C. § 2254(b)(2) (a habeas petition may be denied on the merits, notwithstanding the petitioner's failure to exhaust available state court remedies).

## I.    RELEVANT BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are established by the materials submitted by the parties (*see* ECF No. 1 at 9–65; ECF No. 13-1).[1]

On March 18, 2016, Sergeant Goodwin issued Sussman two disciplinary reports (DRs), Log # 102-160772 and Log. # 102-160773, based upon events that occurred earlier that day (*see* ECF No. 1 at 29, 42 (FDOC Charging DR Log ## 102-160-772 and 102-160773)).

DR Log #102-160773 charged Sussman with battery or attempted battery on an inmate, a violation of Rule 33-601.314, Sect. 1-18 of the Florida Administrative

---

[1] Many of the exhibits submitted by the parties are duplicative.  The court will cite to only one and refer to it by the document number and page number(s) automatically assigned by the court's electronic filing system.

Code, (ECF No. 1 at 29).    Sergeant Goodwin asserted the following facts as the

basis for this DR, in relevant part:

> On 3/18/16 at approximately 12:32AM, I Sergeant W. Goodwin, while assigned as Q-dormitory housing supervisor observed Inmate Sussman removed [sic] his arm from the food flap and jumped [sic] on Inmate Brooks['] back while placing Inmate Brooks in rear choke hold and wrapping his legs around Inmate Brooks' waist.

(ECF No. 1 at 29).

DR Log #102-160772 charged Sussman with disobeying an order, a violation

of Rule 33-601.314, Sect. 6-1 of the Florida Administrative Code (ECF No. 1 at 42).

Sergeant Goodwin asserted the following facts as the basis for this DR, in relevant

part:

> On March 18, 2016, at approximately 12:32AM, I Sergeant W. Goodwin, while assigned as Q-dormitory housing supervisor, instructed Inmate Sussman to cease his battering action on Inmate Brooks to no avail.  Chemical agents had to be utilized in order to bring Inmate Sussman back into compliance with orders.

(ECF No. 1 at 42 (FDOC Charging DR)).

Investigation of the charges began on March 18, 2016, at approximately 3:00

p.m. and concluded on April 13, 2016, at approximately 11:00 a.m. (nearly three

hours prior to the DR hearing at 1:43 p.m.) (*see* ECF No. 13-1 at 74, 93, Disciplinary

Reports)).  Officers Amber Davis and Nathsa Boyett were the investigating officers

(*see* ECF No. 13-1 at 74–82, 93–101 (Disciplinary Reports, Disciplinary

Investigative Reports (DC6-112A), Witness Statements (DC6-112C), Documentary

or Physical Evidence Disposition (DC6-151), Witness Disposition (DC6-112B))).

Sergeant Goodwin was interviewed by phone and stated that the DRs were

true as written in the charging DRs (*see* ECF No. 13-1 at 76, 95 (Disciplinary

Investigative Reports)).

Officer Boyett provided Sussman written copies of both charges on April 4,

2016 (ECF No. 1 at 29, 42 (FDOC Charging DRs)).  Sussman provided Officer

Boyett the following written statement regarding his version of the events underlying

both DRs:

> This DR is a duplicate of 102-160-773, and violates double
> jeopardy.  Also video will show that before a physical confrontation
> broke out between Brooks and I [sic], I had asked Sgt. Goodwin to cuff
> me up and remove me from cell [sic], but he refused, even though I told
> him I feared for my life.  So I put my arm out of food [sic] flap, which
> is when Brooks got me in a choke hold, and I reacted in self defense.
> Even then, Sgt. Goodwin refused to cuff me up, and deliberately
> allowed the situation to escalate.

 (ECF No. 13-1 at 77, 96 (Witness Statements of Sussman)).

Officer Boyett notified Sussman of the following, with respect to

documentary or physical evidence:

> In the event that you have evidence that you want considered, it must
> be stated below. . . .  If the evidence is a videotape the investigator will
> determine whether the tape described will provide evidence to support
> the inmate's statement.

(ECF No. 13-1 at 78, 97 (Documentary or Physical Evidence Disposition, DC6-151)).  Sussman identified the audio/video recording of Q-1 wing from March 18, 2016, at 12:32 a.m. and referred to his written statement as describing what the recording would show (*id.*).  Officer Boyett stated that, based upon review of the identified tape or the capabilities of the particular taping equipment, the tape requested by Sussman did not provide evidence to support Sussman's statement (*id.* at 97).  A DC6-2028 was included in the investigating officers' reports (*see* ECF No. 13-1 at 76, 95 (Disciplinary Investigative Reports indicating that DC6-2028 was included)).  With respect to the DC6-2028, FDOC regulations provide that "[i]n the interest of institutional security, this form shall not be provided to the inmate, but shall be retained with the other disciplinary report documentation."  Fla. Admin. Code r. 33-601.305(4).

Officer Boyett notified Sussman of the following, with respect to witnesses:

In the event that you have material witnesses, they must be listed below. . . .  As a rule the testimony of inmate witnesses will be presented by written statements instead of witnesses appearing at the hearing. Multiple disciplinary hearings are often held at one time and limited staffing prohibits the routine retrieval and escort of inmate witnesses to the hearing and back to assignments.  Further, written statements minimize the disruption of work and program assignments of inmate witnesses.

(ECF No. 13-1 at 80, 99 (Witness Disposition, DC6-112B)).  Sussman identified Larry Brooks and Inmate Pagano as material witnesses (*id.*).

Inmate Michael Pagano provided Officer Boyett the following written statement on April 4, 2016:

> The Maestro called Srgt. Goodwin to the door at Q1-11[illegible] to remove the food tray from the cell and request to be removed from the cell with inmate Larry Brooks.  When The Maestro started asking Srgt. Goodwin to be removed from cell Q1-117 because he was in fear for his life.  At that time I saw inmate Larry Brooks wrap his arm around The Maestro's neck and start pulling him away from the food flap and choking him.  At that time Srgt. Goodwin said for the inmate Larry Brooks to remove his hands from The Maestro.  Three times after he refused to listen Srgt. Goodwin then sprayed them with mace.  After that they were removed from the cell and placed in the shower.

(ECF No. 13-1 at 82, 101 (Witness Statement, DC6-112C)).

On April 13, 2016, Officer Davis attempted to obtain a written statement from Inmate Larry Brooks (*see* ECF No. 13-1 at 81, 100 (Witness Statement, DC6-112C)).  Officer Davis reported that Inmate Brooks voluntarily refused to provide a written statement and refused to sign the Witness Statement form (*see id.*).

Sussman's disciplinary hearings were held on April 13, 2016 at 1:40 p.m. and 1:43 p.m. (ECF No. 13-1 at 74–75, 93–94 (Disciplinary Reports)).  Sussman was present at the hearings, pled not guilty, and declined staff assistance (*id.*).  The hearing team consisted of Officers K. Nichols and M. Silcox (*id.*).  The hearing team

noted that the hearing was delayed "due to further investigation and inmate's disorderly conduct" (*id.*).  The hearing team found Sussman guilty of both charged infractions (*id.*).

The basis for the team's decision with respect to DR Log #102-160772 was the following:

> Based upon the investigation and the statement provided by the officer that, "On March 18, 2016, at approximately 12:32AM I, Sergeant W. Goodwin, while assigned as Q-dormitory housing supervisor, instructed Inmate Sussman to cease his battering action on Inmate Brooks to no avail.  Chemical agents had to be utilized in order to bring Inmate Sussman back into compliance with orders."  Inmate Brooks, Larry D17339 refused to make a statement.  All witness statements were reviewed and considered by the team in reaching their decision.  Based upon review of the identified tape or the capabilities of the particular taping equipment, the tape requested does not provide evidence to support the inmate's claim.

(ECF No. 13-1 at 74–75 (Disciplinary Report)).

The basis for the team's decision with respect to DR Log #102-160773 was the following:

> Based upon the investigation and the statement provided by the officer that, "On 03/18/16, at approximately 12:32AM I Sergeant W. Goodwin, while assigned as Q-dormitory housing supervisor observed Inmate Sussman removed his arm from the food flap and jumped on Inmate Brooks['] back while placing Inmate Brooks in rear choke hold and wrapping his legs around Inmate Brooks' waist."  Inmate Brooks, Larry D17339 refused to make a statement.  All witness statements were reviewed and considered by the team in reaching their decision.  Based upon review of the identified tape or the capabilities of the

particular taping equipment, the tape requested does not provide
evidence to support the inmate's claim.

(ECF No. 13-1 at 93–94 (Disciplinary Report)).

The DR Team issued written decisions stating the basis for the decisions (ECF
No. 1 at 30, 43 (FDOC Disciplinary Reports, Hearing Information)). As punishment
for each charge, Sussman was assigned to disciplinary confinement for thirty days
and lost thirty days of gain time (*id.*).

## II.    DISCUSSION

### A.    Sussman's Habeas Claims

Sussman's initial habeas petition presents two procedural due process
challenges to the DRs (*see* ECF No. 1 at 2–6). In his motion to amend and proposed
amended petition, Sussman seeks to add a third procedural due process claim (*see*
ECF No. 33 at 11, 13, 15).

Because Sussman sought to amend his petition more than twenty-one days
after Respondent served its responsive pleading, Sussman may amend only with
Respondent's consent or the court's leave. *See* Fed. R. Civ. P. 15(a)(1)–(2).
Respondent opposes amendment; therefore, the court's leave is required. Rule 15
provides that the court "should freely give leave when justice so requires." Fed. R.

Civ. P. 15(a)(2).  In the interest of justice, the undersigned will grant Sussman's motion to amend.

### B.    Procedural Due Process Standard

Discipline by prison officials in response to a prisoner's misconduct "falls within the expected perimeters of the sentence imposed by a court of law." *Sandin v. Conner*, 515 U.S. 472, 485 (1995).  Constitutional due process rights attach to prison disciplinary proceedings if the proceeding at issue implicates a constitutional protected liberty interest such as gain time credits.  *See Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985); *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).  However, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556.  Where gain time credits are at stake in a prison disciplinary proceeding, inmates must receive only the following procedural protections:  (1) advance written notice of the charges against them; (2) an opportunity for the inmate to call witnesses and present documentary evidence, so long as doing so is consistent with institutional safety and correctional goals; and (3) a written statement by the factfinder outlining the evidence relied on and the reasons for the disciplinary action.  *Id.* at 563–66.

The Court's decision in *Wolff* includes an extensive discussion about the issues presented by Sussman in his habeas petition, that is, an inmate's rights with respect to calling witnesses, collecting documentary evidence, and presenting evidence in his defense:

> [T]he inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals. Ordinarily, the right to present evidence is basic to a fair hearing; but the unrestricted right to call witnesses from the prison population carries obvious potential for disruption and for interference with the swift punishment that in individual cases may be essential to carrying out the correctional program of the institution. We should not be too ready to exercise oversight and put aside the judgment of prison administrators. . . . Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence. Although we do not prescribe it, it would be useful for the Committee to state its reason for refusing to call a witness, whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases. Any less flexible rule appears untenable as a constitutional matter, at least on the record made in this case. The operation of a correctional institution is at best an extraordinarily difficult undertaking. Many prison officials, on the spot and with the responsibility for the safety of inmates and staff, are reluctant to extend the unqualified right to call witnesses; and in our view, they must have the necessary discretion without being subject to unduly crippling constitutional impediments. There is this much play in the joints of the Due Process Clause, and we stop short of imposing a more demanding rule with respect to witnesses and documents.

Confrontation and cross-examination present greater hazards to institutional interests.  If confrontation and cross-examination of those furnishing evidence against the inmate were to be allowed as a matter of course, as in criminal trials, there would be considerable potential for havoc inside the prison walls. . . .  We think that the Constitution should not be read to impose the procedure at the present time and that adequate bases for decision in prison disciplinary cases can be arrived at without cross-examination.

. . . .

The better course at this time . . . is to leave these matters to the sound discretion of the officials of state prisons.

418 U.S. at 566–69 (footnote omitted).

Years after *Wolff*, the Court clarified:

prison officials may be required to explain . . . the reason why witnesses were not allowed to testify, . . . either by making the explanation a part of the "administrative record" in the disciplinary proceeding, or by presenting testimony in court. . . .  [S]o long as the reasons are logically related to preventing undue hazards to "institutional safety or correctional goals," the explanation should meet the due process requirements as outlined in *Wolff*.

*Ponte v. Real*, 471 U.S. 491, 497 (1985).

## C.    Relevant FDOC Administrative Regulations

The FDOC's regulation concerning audio/videotape evidence provides as follows:

(4) Reviewing documentary or physical evidence referenced by the charging staff person or identified by the charged inmate on Form DC6-151, Documentary or Physical Evidence Disposition.  When the evidence is a videotape or audiotape identified by the inmate, the inmate must also include a written statement on Form DC6-151

describing what he expects the tape to show. . . . The investigator shall determine whether, based upon review of the tape itself or the capabilities of the particular taping equipment, the tape described by the inmate does or does not provide evidence to support the inmate's statement. If the investigator determines that the tape provides evidence to support the inmate's statement, he shall prepare a summary for the investigative report. If the investigator determines that the tape does not provide evidence to support the inmate's statement, the inmate will be provided with the following written statement in the basis of findings section of the disciplinary report: "Based upon review of the identified tape or the capabilities of the particular taping equipment, the tape requested does not provide evidence to support the inmate's statement." The investigator shall provide on Form DC6-2028, Disposition of Videotape/Audiotape Evidence, a detailed description of why the tape did not provide evidence to support the inmate's statement. In the interest of institutional security, this form shall not be provided to the inmate, but shall be retained with the other disciplinary report documentation.

Fla. Admin. Code r. 33-601.305(4).

FDOC regulations concerning to the calling of witnesses at the disciplinary hearing provide as follows:

The inmate may request that witnesses appear at the hearing, but inmate witnesses shall not be routinely called before the disciplinary team or hearing officer to provide live testimony for the following reasons:

(a) Multiple hearings are routinely scheduled at one time and the presence of witnesses during these hearings presents a potential security risk for the facility and the safety of staff and inmates as well as a diversion of additional security staff from assigned posts.

(b) The routine presence of inmate witnesses during hearings would cause a disruption in the orderly operation of the facility, as it removes inmates from routine work assignments and programs.

(c) The testimony of witnesses requested by the charged inmate shall be presented at the hearing through Form DC6-112C, Witness Statement Form, unless the inmate:

> 1. Has completed and signed the witness request form during the investigation;

> 2. Makes a request at the hearing for a witness to appear to provide live testimony; and

> 3. The disciplinary team or hearing officer determines that the reason provided by the charged inmate for requesting live testimony overcomes the burden on institutional staff caused by the retrieval and escort of live witnesses as well as the diversion of security staff from assigned posts due to the potential security risk that may result from the appearance of live inmate witnesses and the disruption to the assignments and activities of inmate witnesses.   Form DC6-112C is incorporated by reference in Rule 33-601.313, F.A.C.

. . . .

(g) Witnesses shall not be called or certain information disclosed if doing so would create a risk of reprisal, undermine authority or otherwise present a threat to the security or order of the institution. The inmate witnesses must be willing to testify by means of an oral or written statement provided to the investigating officer, hearing officer, or the disciplinary team.

. . . .

(j) The charged inmate shall not be permitted to question or cross examine witnesses during the hearing.

Fla. Admin. Code R. 33-601.307(3).

### D. Sussman Was Not Deprived of Due Process During the Disciplinary Proceedings

Sussman presents three procedural due process challenges to the disciplinary decisions.

### 1.    Ground One

In Ground One, Sussman claims that the FDOC violated *Wolff* and *Brady v. Maryland*, 373 U.S. 83 (1963) by "suppressing" allegedly exculpatory audio/video evidence (ECF No. 33 at 11, 28–31).[2]  Sussman alleges the fixed wing cameras in Q-dormitory would have shown that he did not batter Larry Brooks or disobey Sergeant Goodwin's order.  Sussman alleges the hearing team did not consider the video or any report that described it.  Sussman asserts at the DR hearing, Chairman Nichols read to him a DC6-2028 Disposition of Videotape/Audiotape Evidence form which stated, "Based upon review of the identified tape or the capabilities of the particular taping equipment, the tape requested does not provide evidence to support the inmate's statement."  Sussman asserts he asked Nichols whether the form included a detailed description of why the tape did not support his version of events, as required by FDOC administrative rule 33-601.305(4).  Sussman asserts Chairman Nichols responded, "No!".  Sussman asserts he also requested that the hearing team

---

[2] Sussman's amended petition includes his sworn declaration and his supporting memorandum (ECF No. 33 at 24–26 (declaration), 27–34 (supporting memorandum)).

consider the audio/video itself and any reports prepared by the Inspector General's Office that may have described its contents, but Nichols again refused.

Sussman contends he had a constitutional right to present either the actual audio/video tape at the DR hearing or a report that described why the tape did not support his version of events.

As an initial matter, neither the Supreme Court nor the Eleventh Circuit has extended the principles of *Brady* to prison disciplinary proceedings. *See Kenney v. Barron*, 239 F. App'x 494, 495 (11th Cir. 2007) ("We have never held that the principles of *Brady* extend to prison disciplinary hearings, and we need not decide that issue in this case.") (unpublished but recognized as persuasive authority).

Additionally, Sussman has not shown a violation of *Wolff*. The administrative record demonstrates that an investigator reviewed the fixed wing tape, determined that it did not provide evidence to support Sussman's claim (i.e., that he acted in self-defense and did not disobey Sergeant Goodwin's order), and included that information in the investigative report. Assuming, purely for argument's sake, that the investigator did not include a detailed description of **why** the tape did not provide evidence to support Sussman's version, as required by FDOC regulations, Sussman has not shown he was actually prejudiced by the absence of such a description. To be entitled to federal habeas relief, Sussman must show that the constitutional error

"had a substantial and injurious effect or influence in determining the [factfinder]'s verdict." *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (internal quotation marks and citation omitted). Sussman has not done so here.

Sussman alleges the fixed wing audio/video tape would have shown that he battered, or attempted to batter, Inmate Brooks in self-defense. An inmate does not have a constitutional right to present a claim of self-defense as a defense to a prison disciplinary report. *See Rowe v. DeBruyn*, 17 F.3d 1047, 1053 (7th Cir. 1994) (holding that incarcerated inmates do not have a constitutional right to raise claims of self-defense as a defense to prison disciplinary charges); *Holston v. Sec'y, Fla. Dep't of Corr.*, No. 8:17-cv-796-T-02TGW, 2020 WL 1891300, at *4 (M.D. Fla. Apr. 16, 2020); *Walker v. Sec'y, Dep't of Corrs.*, No. 1:09-cv-166-MMP-GRJ, 2012 WL 3206776, at *8 (N.D. Fla. Apr. 23, 2012), *adopted*, 2012 WL 3206480 (N.D. Fla. Aug. 7, 2012).

Further, the hearing team considered evidence that supported Sussman's defense, namely, Sussman's description of the events *and* Inmate Pagano's description in his written statement, which corroborated Sussman's defense.

The problem for Sussman is that the hearing team believed Sergeant Goodwin's description of what he observed. Sergeant Goodwin's statement was sufficient evidence to support the hearing team's decisions finding Sussman guilty

of battery or attempted battery on an inmate and disobeying an order. *Hill*, 472 U.S.
at 457 ("The Federal Constitution does not require evidence that logically precludes
any conclusion but the one reached by the disciplinary board.  Instead, due process
in this context requires only that there be some evidence to support the findings made
in the disciplinary hearing."); *see id.* at 456 (holding that prison guard's testimony
and copies of his written report supported the disciplinary board's conclusion that
the evidence was sufficient to meet the requirements imposed by the Due Process
Clause).

Sussman had not shown that the hearing team's failure to consider the content
of the fixed wing audio/video tape or any description thereof violated *Wolff* or
actually prejudiced him in the disciplinary proceedings.  Therefore, Sussman is not
entitled to federal habeas relief on Ground One.

### 2.    Ground Two

In Ground Two, Sussman claims the FDOC violated his due process rights by
failing to obtain a witness statement from Inmate Brooks (ECF No. 33 at 13, 24–25,
31–32).  Sussman asserts he listed Inmate Brooks as a witness, but Officer Davis
failed to interview him and instead falsely stated on Brooks' witness statement form
that Brooks refused to provide a statement or sign the statement form (*id.*).  In
support of this allegation, Sussman asserts that on the morning Officer Davis stated

she attempted to obtain a witness statement from Brooks, Brooks was housed in the confinement cell next to Sussman's (*id.* at 24). Sussman asserts he was "wide awake" from 5:15 a.m. to the time of the disciplinary hearing at 1:45 p.m. that day, and he never saw Officer Davis approach Brooks (*id.*). Sussman also asserts he saw Inmate Brooks the next day, and Brooks told him that he "was not permitted" to provide a witness statement for either DR (*id.* at 31).

As an initial matter, this case is distinguishable from *Ponte*, because the reason for the hearing team's failure to call Inmate Brooks as a witness is included in the administrative record. The record includes a witness statement form for Inmate Larry Brooks signed by an investigating officer on April 13, 2016, and indicating that Brooks refused to provide a written statement and refused to sign the witness statement form (ECF No. 13-1 at 81, 100 (Witness Statements)).

Additionally, assuming arguendo that Inmate Brooks was not asked to provide a witness statement, Sussman has not shown he was actually prejudiced in the disciplinary proceedings. Sussman does not allege what facts Inmate Brooks would have provided to the hearing team. And even if Sussman alleged that Brooks would have told the team that Sussman acted in self-defense, which is highly unlikely as it would necessarily constitute an admission that Brooks started the fight, such allegations as to the content of Brooks' testimony would be speculative and thus

insufficient to show prejudice.  Moreover, the hearing team considered evidence that Sussman acted in self-defense, specifically, Sussman's own statements and those of Inmate Pagano.

Sussman has not shown that the failure to obtain a witness statement from Inmate Brooks violated his due process rights under *Wolff* or that he was actually prejudiced in the disciplinary proceedings.  Therefore, Sussman is not entitled to federal habeas relief on Ground Two.

### 3.    Ground Three

In Ground Three, Sussman claims the FDOC violated his due process rights by failing to allow him to inspect Inmate Michael Pagano's witness statement(s) and failing to call Pagano as a witness at the DR hearings (ECF No. 33 at 15, 25–26, 32–34).  Sussman asserts he asked the hearing chairman, Officer Nichols, if Pagano had submitted a witness statement for each DR, and Nichols responded "Yes, he did" and then "falsely purported to read to Sussman two different statements" (*id.* at 25, 32).  Sussman asserts Nichols also denied his request to personally examine Pagano's written statement(s) (*id.*).  Sussman asserts he later discovered that Pagano's written statements were identical and did not bear the DR number to which they related (*id.*).

Sussman received all the process he was due with respect to Inmate Pagano's statement.  Both DRs stemmed from one incident.  Inmate Pagano provided a statement describing what he witnessed, and the DR team considered it in rendering their decision on each charge.  Sussman did not have a constitutional right to present Inmate Pagano's testimony in person at the hearing or to personally examine Pagano's written statement.  *See, e.g., Nolley v. Warden, Macon State Prison*, 820 F. App'x 845, 857 (11th Cir. 2020) (rejecting petitioner's claim that prison disciplinary hearing violated due process based upon hearing officer's failure to call inmate witnesses at hearing where hearing officer considered inmates' written statements, which were cumulative of petitioner's own version of events) (unpublished but cited as persuasive authority).  Therefore, Sussman is not entitled to relief on Ground Three.

III.    CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  28 U.S.C. § 2254 Rule 11(a).  A timely notice

of appeal must still be filed, even if the court issues a certificate of appealability.  28 U.S.C. § 2254 Rule 11(b).

"Section 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'"  *Miller-El v. Cockrell*, 537 U.S. 322, 336  (2003) (quoting § 2253(c)(2)).  "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'"  *Buck v. Davis*, 137 S. Ct. 759, 773  (2017) (citing *Miller-El*, 537 U.S. at 327).   The petitioner here cannot make that showing.   Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of  Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is **ORDERED**:

Petitioner's motion to amend (ECF No. 32) is **GRANTED** and the proposed first amended petition (ECF No. 33) **SHALL TAKE EFFECT**.

And it is respectfully **RECOMMENDED**:

1.      That the amended habeas petition challenging FDOC DR Log Nos. 102-160772 and 102-160773 (ECF No. 33) be **DENIED**.

2.      That a certificate of appealability be **DENIED**.

3.      That the clerk of court be directed to enter judgment accordingly and close this case.

At Pensacola, Florida, this 8<u>th</u> day of September 2021.


        /s/ *Elizabeth M. Timothy*
        **ELIZABETH M. TIMOTHY**
        **CHIEF UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control</u>. An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**